We're ready to start with 20-4000 United States v. Babcock. Mr. McMurray, are you ready to proceed? Good morning. Before the time starts, I want to make sure you can hear me. Yes. Yes. I can hear you. Judge Kelly, can you hear Mr. McMurray? I hear him. Okay, good. Good. Thank you. Go ahead. Good morning. Good morning. May it please the court. My name is Benji McMurray. I'm here on behalf of Zachary Babcock. Your honors, Zachary Babcock was wrongly sentenced under the career offender guideline based on a prior conviction under Utah statutes that prohibits offering, consenting, or arranging to sell a controlled substance. The error was the result of his counsel's failure to identify the categorical approach or even consider whether this prior conviction should qualify, and he's entitled to relief from that error. Now, we originally raised a number of theories as to why this was an error, and I think we're left with two at this point, but both of these are very important, and the court could grant relief by finding in our favor under either of these theories. First of all, we argue that Utah offer to sell is broader than United States sentencing guidelines 4B1.2, because 4B1.2 requires possession with intent to distribute or actual distribution, and it does not include mere offers to sell in the conduct that it covers. Utah offer to sell, as we can see from the relevant case law, the state of Utah has appropriately adopted a very broad statute, and the Utah offer to sell is accomplished when a person makes an offer having the intent to complete a sale or assist in a sale, and then takes any step towards completing that. Now, the reason this falls short of the Tenth Circuit case law is because in order to constitute an attempt, a defendant must take a substantial step, and the Utah offer to sell, which can be accomplished based on merely preparatory conduct, does not require proof of a substantial step. Well, what do you mean by a substantial step? As I understand the common law, a substantial step is an overt act that shows intent to effect a sale, and isn't that the same standard that all courts use to determine whether there  Your Honor, this is a tricky area of the law because I think that there's a natural inclination to conclude that any step is a substantial step, but I think that the case law is clear that there has to be something more than just any step. There are a couple of cases from this court that I think explain this pretty well. They're not discussed in the briefs, but I think they're important for the court to be aware of. One is called Strahl. This is 958 F. 2nd, 980, and the other is called Martinez, 602 F. 3rd, 1166. Both of these cases look at Utah and Arizona statutes, respectively, and particularly the attempt statutes that were in place. And Strahl and Martinez are very clear about the idea, and the government actually acknowledges this point in its brief, that mere preparation to commit a crime does not constitute an attempt. Now in Strahl, for example, this court recognized that the Utah attempted burglary statute could be accomplished by making a duplicate key, casing the targeted building, obtaining floor plans of a structure, or possessing burglary tools. I think that if the court were to adopt the rule that you suggested, to say that any step that manifests an intent to commit a crime, if that were enough, that rule is inconsistent with Strahl and Martinez and other cases. I think the government's side of the matter is— Well, haven't we said that someone who accumulates the ingredients to make meth, that's enough to prove an attempt? Well, now accumulating all of the ingredients, that indeed may be an attempt. I mean, to say that you have all of the ingredients, I mean, I would— I'm not sure it required all the ingredients, but if you start gathering some of the ingredients that say preparation to commit the crime, requiring ingredients can easily be described as preparation, but that's enough for an attempt, is it not? Your Honor, I'm not well-read on those precursor cases right now. I can't speak to those. What I can say is that any attempt is inherently preparatory, right? And there's a scale or degrees of preparation that must be shown, and I think that the case law is clear. When you look at the totality of the case law, look at Strahl and Martinez, that at some point, the conduct becomes so attenuated from the crime that it can't really be conceived as an attempt. Now, I think that coming back to this particular— Mr. McMurray, which of the two cases did you talk to us about? Was it Martinez or Strahl, the burglary case? The Strahl is the one that talks about making a duplicate key and casing the building. What kind of case is Martinez? Is that a drug case? No, Martinez is also dealing with an attempted burglary. All right, all right. I'm not sure burglary helps us, so let me ask you this. Isn't an offer itself, to sell drugs, a substantial step? I think we need to come back to this court's case law, McKibbin, where McKibbin— When you started over, you were cut off. The sound was broken up, so we just did not hear your response to Judge Murphy's question. I'm sorry. I think the answer lies in McKibbin. McKibbin tells us when an offer rises to the level of being what this court has called a bona fide offer. And we argue that the test under McKibbin is that the defendant had both the intent and the ability to proceed with the sale. McKibbin talks about the idea that a defendant could make a sham offer and that a state might reasonably want to prohibit sham offers. But doesn't the case law from Utah eliminate that? And that is that it is not an offer within the Utah statute if it's not a bona fide offer. That's the way I read Utah's case law. The way that I read the Utah case law is to say that Utah requires a sincere offer. How does sincere differ from bona fide? Sincere gets to the intent question. And Utah says there have to be enough acts to show that the person has the subjective intent to do this. But Utah does not require that the defendant actually have the ability to do this. So for example, if you look in the Hester case... How can it be sincere if the defendant has no ability to perform? Because a defendant may believe that he has the ability to perform. So the defendant may say, well, you know, I know that I can get drugs at Pioneer Park. And, you know, hey, I can go get you some drugs. All right. Or an example that crossed my mind this week is I was in the hospital and the nurses were sending all kinds of oxycodone and things to my wife. I thought, man, what if I were to call somebody up and say, hey, I got I got a supply here. You know, I don't really have a supply. I hope that didn't actually cross your mind. It's kind of a running joke between me and my wife. But my point is simply this. But Utah requires... Are you saying that Utah does not require a bona fide offer, but they require a sincere offer and a sincere offer is not necessarily a bona fide one because you could have a person who is seriously misled as their own abilities. Is that a fair statement of your position? Yes, your honor. I think that's right. And I think my connection might be fumbling a little bit here. But I think that essentially that the gap between Utah law and this circuit's precedent is that this circuit has said that in order to ensure that the crime is not so attenuated, we want to see not only the intent, which Utah requires, but we also want to see that the person has an actual ability, not a hypothetical ability, not a likely ability, not a professed ability, but the actual ability to consummate the sale. Otherwise, it's a sham offer. And Utah cases do not require the ability to perform, is what you're saying. That's correct. That's correct. Mr. Bigberry, I think this may be a case, this may be the situation where there's enough ambiguity. I'm not sure if there is the ambiguity you state, but enough ambiguity that it would burden to show that someone has been prosecuted in Utah for a drug offense that would not constitute an attempt under federal law. Your honor, I would disagree with that, with that characterization of the state of the law, because I think that Hester and Harrison are, I mean, Hester in particular is very clear. If you look at footnote six of Hester, the Utah Court of Appeals says that evidence that would establish intent could include making phone calls, seeking drugs, driving around, looking for drugs, explaining how he intends to acquire drugs. I think that conferring with known drug suppliers, particularly driving around looking for drugs or describing a plan on how to obtain drugs, those two in particular that the Court of Appeals has recognized show that a person who doesn't have the present ability to consummate the sale could be prosecuted. And so I don't think, you know, given that this language comes from the Court of Appeals, I think that satisfies our burden of showing what the state of the law is in Utah. Well, I'm not sure whether those examples, I mean, what they say is this is evidence of intent. You might need more than one of those pieces of evidence in a particular case, but can you cite to any case? Actually, it doesn't even need to be an appellate decision. Just a case where someone was prosecuted on evidence that would not be enough to establish attempt. I'm not. I think you may be much from that footnote. Your Honor, I think that that that question exposed the problem with with this this expectation of finding cases. The reality is that where the Court of Appeals has laid out the land, I would not expect to see appellate decisions challenging this, nor is there any means to identify in the scores of Utah prosecutions. I mean, district court trial court prosecutions in Utah are not reported. It would be impossible to identify cases. Now, I do know that based on the prosecutions I have seen, you know, for example, we've got Pioneer Park. It's just three blocks from the federal courthouse. This is an area of a lot of hand-to-hand, low-level drug buys, and I've seen a lot of cases where officers are very willing in their efforts to interdict drugs are willing to prosecute very low-level offenses. They may not get a lot of time, but what we see is that law enforcement is using all of the tools at its disposal. So I think there's no reason, given this clear pronouncement from the Court of Appeals, there's no reason to believe that Utah is not using the law in this way to prosecute people even attenuated in their connection to drug distribution. Your Honors, I see that I'm about out of time. We haven't touched the inconsistencies between the commentary and the guideline itself. I think that the Campbell case, which we just cited to you within the last week, is a great example of the analysis that should prevail. 4B1.2 identifies a closed set of crimes. The commentary expands that. It's therefore inconsistent, and if I could reserve the last 26 seconds, I'd like to do that. Ms. Stevens? Thank you, Your Honor. May it please the Court, Elizabeth Ann Stevens, Assistant United States Attorney, on behalf of the United States. In order for Mr. Babcock to prevail, he must establish that his attorney provided deficient performance and that that performance prejudiced him. And this court looks at whether an attorney provided deficient performance by evaluating the conduct in light of defense counsel's perspective at the time. And Mr. Babcock must show that his prior counsel overlooked a clearly meritorious objection based on controlling law that was settled at the time. And this court need only consider one of the prongs of ineffective assistance of counsel. If it finds that that is not met, further analysis is not required. So in light of that, there is an easy way to dispose of this case and affirm the district court, even if the court finds that it's not moot. I want to start where Mr. McMurray ended, with the guideline commentary issue. Because Mr. Babcock claims back in October 2017, when he was sentenced, that his counsel's performance was deficient for failing to raise this argument under Stinson that the guideline commentary was inconsistent with the guideline itself. But Mr. Babcock concedes, as he must, that every case to hold that the commentary was inconsistent came out after he was sentenced. So in order to get around this very obvious and glaring and fatal problem, he claims in his reply brief that the argument was obvious under Stinson. And that's why counsel should have made the argument in October 2017. So this is where it gets interesting and maybe even a little ironic, because Mr. Babcock filed his 2255 in 2018, after the DC Circuit decided Winstead, which was the first case to find that the guideline commentary was inconsistent. But his 2255 did not include a Stinson claim. In fact, he did not raise a Stinson claim until December 2019, after two court of appeals had found that it was inconsistent. And that first shows up in his supplemental memorandum and support, because Judge Stewart had asked the parties to file supplemental briefing after the evidentiary hearing. So all this shows is that it was a novel theory. And defense counsel could not reasonably be expected to have raised it in October of 2017. And some of our evidence is that it wasn't raised actually in the 2255 proceeding until 2019, after it became apparent from some court of appeals that this might be an issue. Mr. Stevens, has that commentary in question been around as it is for a substantial period of time before the sentencing in 2019? Yes. And significantly, this court has applied that commentary. So I think while that's not a Chavez issue, it lends some credence to the defense attorney believing that this was valid and appropriate to use. So that's the issue on the guideline commentary. And then I'm going to turn to Matkins and McKibbin. And there are some really serious problems with Mr. Babcock's reliance on these cases. And here, the main one is McKibbin didn't come out until December 28, 2017. McKibbin, he's relying on that to say that Utah doesn't require a bona fide offer. He said the answer comes from McKibbin. Well, the court can't consider McKibbin in evaluating division performance because Mr. Bugden didn't have the benefit of McKibbin when Mr. Babcock was sentenced. And I apologize if that is not in the brief. But it seems that everyone who was litigating this case in the district court and the court of appeals until now was just assuming that those cases were both in existence, but they were not. It was only Matkins. I'm sorry. It was the sentencing was in what year? It was 2017 in October. And Matkins came out in August of 2017. And McKibbin came out in December of 2017. So if you look at Matkins, you know, the problem with the Kansas statute was that a person could violate it by possessing with the intent to offer for sale but not have the intent to distribute. And Hester completely resolves that issue for us because Utah courts have said a defendant has to have the intent. So we don't have an issue like there was in Kansas at all. So defense counsel couldn't have been deficient in October for failing to raise an issue because under Matkins, it's fine. Utah statute is completely appropriately a predicate offense under the guidelines. And it's even. But can't you just look at the Utah statute and say legitimately that it could require what sincerity. But sincerity is not the same thing as a bona fides because the person may be seriously misled as to their abilities. So it has to be bona fide includes the ability. And is that required by the Utah statute? So what Utah courts have said is that. So this is Hester. In order to be guilty of, for example, arranging under the statute, the person has to have like the intent to distribute. They have to arrange. They have to have the intent to distribute. And then they also have to commit some act in furtherance of the arrangement to distribute drugs. So this is on page seven hundred twenty nine. Hester describes those acts as, quote, active steps to facilitate the distribution, close quote of the controlled substance. So I don't know what year was Hester decided. Oh, Hester was decided. And I know it's before the sentencing. That's right. Couldn't you satisfy Hester? Yes. You make an offer to someone and then you get in your car and you just drive around Pioneer Park looking, even though you'd had no experience before. Isn't that sufficient under Utah law, but not sufficient under federal law? It would be sufficient under Utah law, but it's also sufficient under federal law because the the offer or the arranging is the substantial step. But but but there's no arranging. You're just driving around. Thinking about, you know, driving around to find a circumstance to arrange. You have the intent. You've made the offer. But you have no ability. Well, the offer is a substantial step. Right. And under Utah law, you have to have the intent. So you have to offer with the intent to distribute and you have to commit some act in furtherance of the offer. And so you've gone to Pioneer Park in furtherance of the offer. Yeah, I think that would violate. But I still think it's ever wrong. I'm sorry. Let me interject one question. Judge Murphy was asking Mr. McMurray whether the offer itself. Is the overt act necessary to establish attempt and you're saying under federal law that is a sufficient overt act, is that right? Right. And I believe it was Faulkner. This court's decision that said we look at attempt, not in light of how the state defines it, but it's a federal question for purposes of the guidelines. Although you can look at the state law to get a sense of what's generic and attempt generally. So I think that's why we're all right on that issue. But there's one other thing on McKibbin I want to point out, even though it doesn't apply to this analysis of deficient performance because it didn't exist. I take issue with. The assertion that McKibbin defines a bona fide offer as including ability, because if you look at page 973 of McKibbin, this is how it comes up. The government argued that the Colorado Supreme Court had never had a case that addressed addressed a conviction where there was a fraudulent or non bona fide offer. And this court says, well, yeah, that's true. Also, under Kansas law and Matkins, yet we found that that was required. And then they get a C site to Matkins. And then from there we get a C also site to Bryant, which is a First Circuit case analyzing the New York statute. And this is all it says. And it's in a parenthetical about Bryant. Quote, holding New York offense of offering to sell a controlled substance fell within USSG 4B 1.2B because another quote emphasized it is well established under New York law. End of emphasis that in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell, i.e. that the defendant had both the intent and ability to proceed with the sale. Close quote, emphasis added internal quotation marks omitted. That's the only place that ability shows up in McKibbin. It doesn't show up in Matkins, the case that we have to look at in terms of division performance. It doesn't show up anywhere else in McKibbin. It doesn't show up in vigil afterwards. And so I don't think that the court actually adopted the ability language in defining bona fide offer. Not in a parenthetical with a quote with a see also site from a First Circuit case describing a New York statute. But it is in McKibbin. It's in McKibbin. Yes. And the question I guess is whether it's deficient performance by an attorney not to run with that. I think it's not deficient if you fail to contemplate a novel theory or if you fail to raise an issue where the law was unsettled. I mean, you have to overlook something that was clearly meritorious under existing, settled and controlling law. And I think back in 2017, when you only had Matkins and you have Hester, which resolves the intent issue, I don't see how that can be deficient performance. I'm not sure that the deficiency prong for ineffective assistance requires that much. I mean, one one one element, not in the technical sense, but one one factor in a case where you're challenging a guidelines calculation is there's really no downside. Why wouldn't a competent attorney raise a reasonable argument, even if it's not settled? Wouldn't you require an attorney to to do that? Wouldn't you expect an attorney to raise a reasonable bunch to a guideline, even if the law weren't settled in faith? The law doesn't require reasonable, though it requires meritorious under existing, settled and controlling law. And I think what's what's what's what's your what's your site for that? Oh, I have your brief and I wasn't persuaded, at least at that time that that was. Yeah, it's I'm relying I'm relying on the cases we cited in the brief for those. Does one actually say that there's three? There's three that use those particular words. And I am Stephen, your view is that it has to be a dead bang winner. No, no, no, no. It does not have to if it's no, it doesn't have to be a dead bang winner. Absolutely not. Absolutely not. But I mean, you look at the state of the law here. I mean, you look at Hester, you look at Madkins, you look at what was happening with offers and. And you have to put yourself in Mr. Buggins position at the time. Right. I mean, now we can all look back at 2019. Oh, well, you know, maybe this is something that you could have run with. But, you know, you have to be careful, I think, as a defense attorney, too, is like, what do you run with? Because he was really banking on trying to get rid of that four level enhancement for in furtherance of another crime. And he was that was a that was a big reduction, a four level reduction. He put on his his client to testify at the hearing. He submitted documentation. I think we all understand. I think we all understand those those considerations. We're just uncomfortable with your saying it's not it's not an effective assistance to fail to raise an issue. Unless that issue was, in Judge Murphy's immortal words, a dead bang winner. Well, that seems that I'm uncomfortable with that requirement. So we could probably agree that the law was unsettled at the time with respect to Utah distribution. At best, the law was unsettled post-Madkins. I think Madkins makes Utah distribution still a violation. I think McKibben only actually helps us. So that's what I would go back to. Judge Kelly would like to I can't hear everyone's question. You're on mute. Oh, go ahead. We can't hear you at all. Judge Kelly. OK, I could hear that. Go ahead. I want to know why we're not focusing on prejudice. I see him out of time. May I answer that? Yeah, yeah. So I was that was actually what I was going to say in my remaining seconds of time is that if we did have a question about deficient performance, I think we clearly can go to the prejudice prong and find that in 2017 and in fact today that the Utah distribution statute is a valid predicate under the guidelines. And I see him out of time. Did you want to follow up, Judge Kelly? Anything further? OK, sorry, I didn't see your hand at first. Judge Murphy, do you have any questions for? OK, Mr. McMurray, she went over a few seconds, give you 30 seconds. Thank you, your honors. I think the most important thing I can say is that with respect to this analysis, the government is attempting to shift the focus by looking at the case law, much of which comes after. But really, this is a question of statutory construction. We have we have an attorney who's clear at the hearing that he didn't identify this issue. If he had picked it up, he could have looked at the Utah statute that includes offer arranged consent compared to with the guideline definition that doesn't include those terms. And on the face of the statutes, there's a disparity that he could have objected. You stopped, Mr. McMurray, we. Okay, the precinct, Mr. McMurray, we lost you, we lost you the last 10 seconds, maybe 15 seconds. We didn't hear it. I apologize. We do cite in our brief a number of cases that were decided before sentencing that counsel could have looked to should have looked to. This is not so novel that the government is just wrong. Had counsel compared the statute with the guideline, he would have seen an analytical disparity that would have warranted further analysis. Had he picked this issue up, the right answer would have been not to apply the enhancement. Thank you. Thank you, counsel. No questions from the panel cases submitted counselor excused.